UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARL D. JAMES, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:12CV267 JAR |
| | ) |
| JEFFERSON REGIONAL, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Jefferson Regional Medical Center's Motion to Dismiss Counts I and II of Plaintiff's Petition for Failure to State a Claim Upon Which Relief May Be Granted (ECF No. 7). This matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Earl D. James, Jr. ("Plaintiff") suffers from significant psychiatric illness, including paranoid schizophrenia and major depressive disorder. (Petition for Damages ("Pet."), ECF No. 6, ¶¶14, 15). On the evening of January 12, 2010, Plaintiff presented to the emergency department ("ED") at Jefferson Regional Medical Center ("JRMC"). (Id., ¶16). At the ED, Dr. Petty Petralia indicated that Plaintiff's chief complaint was "Suicidal/Homicidal" (Id., ¶¶17-18). Dr. Petralia's differential diagnosis was "Altered Mental other (suicidal idealation, major depression schizoaffective disorder")." (Id., ¶20). Dr. Petralia indicated in her notes that "Patient is a [sic] well known to this facility. He was evaluated by the intake coordinator for the mental health division. He will be admitted for further treatment under Dr. Ardekani." (Id., ¶21). Plaintiff then was moved to the psychiatric unit of JRMC and examined by Dr. Ardekani. (Id., ¶22). Dr. Ardekani's Psychiatric Evaluation provides, "This is a 32 year-old black, unemployed male who was admitted through the intake." (Id., ¶23). Dr. Ardekani noted Plaintiff's prior psychiatric history and

indicated that Plaintiff's Axis I diagnosis was, among other things, "Psychosis." (Id., ¶¶24-26). Dr. Ardekani's plan of treatment was that "[u]pon admission, we will detox him. We will start him on medication, and will be looking into a group home or a new placement for the patient. He said he can't sleep so will increase trazdone [sic] from 100 to 300 mg at night." (Id., ¶30). Shortly after Dr. Ardekani's examination of him, Plaintiff got into a fight with another patient. (Id., ¶31). After this altercation and early on January 13, 2010, Plaintiff was discharged and taken to a shelter in downtown St. Louis. (Id., ¶¶32, 39). Prior to discharge, Plaintiff alleges that he was not provided medication or afforded any "stabilizing treatment." (Id., ¶¶33-35).

Plaintiff alleges that he was dropped off in a psychotic state and remained in a psychotic state for the next ten days while on the streets of St. Louis.. (Id., ¶¶40-42). On January 23, 2010 Plaintiff was assaulted while on the streets of St. Louis. (Id., ¶43). Plaintiff asserts that it was "reasonably foreseeable" that Defendants' failure to stabilize him would cause him harm. (Id., ¶47).

Plaintiff filed a Petition for Damages ("Petition" or "Pet.") in the Circuit Court of Jefferson County, State of Missouri, alleging claims, among other things, for Violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") for Failure to Stabilize Before Discharge and for Failure to Provide Appropriate Transfer against JRMC (Counts I and II). (ECF No. 6). On February 15, 2012, JRMC removed the Petition, and asserted that this Court has federal question jurisdiction based upon the EMTALA claims. See 28 U.S.C. §1331; 42 U.S.C. §1395dd. On February 16, 2012, JRMC filed its Motion to Dismiss Counts I and II of Plaintiff's Petition for Failure to State a Claim Upon Which Relief May Be Granted (ECF No. 7).

**STANDARD OF REVIEW**

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the

Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

## DISCUSSION

**I. MOTION TO DISMISS**

Plaintiff brought this action against JRMC, claiming it had discharged him without stabilizing his emergency medical condition or providing an appropriate transfer, in violation of the EMTALA, 42 U.S.C. § 1395dd. (Pet., Counts I and II). EMTALA provides, in relevant part, "If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-- (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) [restricting transfers until individual stabilized]." 42 U.S.C. §1395dd(b).[1]

---

[1] In its opening brief, JRMC argued that Plaintiff's EMTALA claims fail because he has not asserted that he received disparate treatment due to his lack of insurance. (Defendant Jefferson Regional Medical Center's Memorandum in Support of its Motion to Dismiss Counts I and II of Plaintiff's Petition for Failure to State a Claim Upon Which Relief May Be Granted ("Memorandum"), ECF No. 8, pp. 2-3). In response, Plaintiff notes that he is not asserting a claim

JRMC claims that Plaintiff's Petition fails to state an EMTALA claim because Plaintiff was admitted as an inpatient. JRMC asserts that the Centers for Medicare and Medicaid Services ("CMS")[2] has clarified that "a hospital's obligation under EMTALA ends either when the individual is stabilized or when that hospital, in good faith, admits an individual with an EMC as an inpatient in order to provide stabilizing treatment. That is, ... EMTALA does not apply to any inpatient, even one who was admitted through the dedicated emergency department and for whom the hospital had initially incurred an EMTALA obligation to stabilize an EMC, and who remained unstabilized after admission as an inpatient." See Memorandum, p. 6 (citing Medicare Program; Emergency Medical Treatment and Labor Act; Applicability to Hospital Inpatients and Hospitals with Specialized Capabilities, 77 Fed.Reg. 5213, 5214 (Feb. 2, 2012)). Thus, JRMC claims that it is not liable to Plaintiff under Counts I and II because he was admitted.

In response, Plaintiff contends that JRMC could not satisfy its EMTALA obligations merely by admitting Plaintiff. (Response, pp. 6-9)(citing Moses v. Providence Hosp. & Med. Ctrs., Inc., 561 F.3d 573 (6th Cir. 2009)). Plaintiff contends that JRMC also had to ensure that Plaintiff was stabilized to comply with EMTALA. Plaintiff relies on the Sixth Circuit's determination that "a

---

that he did not receive an appropriate medical screening, which requires a plaintiff to plead that he or she received disparate treatment. (Plaintiff's Memorandum in Opposition to Defendant Jefferson Regional Medical Center's Motion to Dismiss Counts I and II of Plaintiff's Petition ("Response"), ECF No. 9, p. 6). Accordingly, Plaintiff asserts that he is not required to plead or prove disparate treatment; rather, he is alleging failure to stabilize before discharge and failure to properly transfer. (Id.). In its reply, JRMC again claims that disparate treatment is the cornerstone of an EMTALA claim. (Defendant Jefferson Regional Medical Center's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Counts I and II of Plaintiff's Petition for Failure to State a Claim Upon Which Relief Can Be Granted ("Reply"), ECF No. 10, pp. 2-3 (citing Mead v. Salem Mem'l Dist. Hosp., No. 4:07CV452, 2008 U.S. Dist. LEXIS 4934 (E.D. Mo. Jan. 23, 2008)). Mead, however, is a failure to treat/screen case, not a failure to stabilize before discharge or failure to properly transfer case. In any event, the Court need not address the issue of whether a plaintiff must plead disparate treatment in a case asserting claims for failure to stabilize before discharge and failure to properly transfer because Plaintiff's Petition fails to state a claim for other reasons discussed herein.

[2]CMS is the agency responsible for implementing EMTALA. Moses v. Providence Hosp. & Med. Ctrs., Inc., 561 F.3d 573, 583 (6th Cir. 2009).

hospital may not release a patient with an emergency medical condition without first determining that the patient has actually stabilized, even if the hospital properly admitted the patient. Such a requirement would be unnecessary if a hospital only needed to admit the patient in order to satisfy EMTALA." Moses, 561 F.3d at 583. In addition, the Sixth Circuit claimed that it did not need to follow CMS's regulation regarding EMTALA liability for inpatients because it "appears contrary to EMTALA's plain language, which requires a hospital to 'provide . . . for such further medical examination **and such treatment** as may be required to stabilize the medical condition[.]'" Id. (quoting § 1395dd(b)(1)(A) (emphasis added in Moses)). The defendants in Moses had relied on a CMS rule "that effectively ends a hospital's EMTALA obligations upon admitting an individual as an inpatient." Id. (citing 42 C.F.R. § 489.24(d)(2)(i)).[3] The Moses court refused to afford the CMS rule Chevron deference because it determined CMS's regulations were contrary to the plain language of the statute. Id.; Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).

As an alternative reason for denying JRMC's Motion, Plaintiff also asserts that his Petition does not allege he was admitted. (Response, p. 9). In fact, Plaintiff contends he does not recall being admitted to JRMC. (Id.). Therefore, Plaintiff claims that whether he was admitted is an issue of fact that must be determined by a jury. (Id.).

Rejecting the analysis in Moses, the Court holds that a hospital meets its obligations under EMTALA once it admits a patient. Under EMTALA, "[i]f the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends[.]" 42 C.F.R. §489.24(a)(1)(ii); see also 42 C.F.R. § 489.24(d)(2)(i); Quinn v. BJC Health Sys., 364 F. Supp. 2d

---

[3]§489.24(d)(2)(i) provides "[i]f a hospital has screened an individual under paragraph (a) of this section and found the individual to have an emergency medical condition, and admits that individual as an inpatient in good faith in order to stabilize the emergency medical condition, the hospital has satisfied its special responsibilities under this section with respect to that individual."

1046, 1054 (E.D. Mo. 2005). The Court concludes that the regulation at issue is based on a permissible construction of the statute and is entitled to Chevron deference. The regulation is fully compatible with the purpose, as well as the text, of the EMTALA. The EMTALA was enacted to prevent "a distinct and rather narrow problem" of patient "dumping," or the practice of refusing to admit or summarily transferring a patient based on a perceived inability to pay for hospital services. Summers v. Baptist Medical Ctr. Arkadelphia, 91 F.3d 1132, 1136-37 (8th Cir. 1996)(discussing the legislative history of EMTALA); Hunt v. Lincoln County Mem. Hosp., 317 F.3d 891, 894, n.5 (8th Cir. 2003). "EMTALA is not intended to duplicate preexisting legal protections, but rather to create a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat." Summers, 91 F.3d at 1137 (citations omitted). As noted by this Circuit, EMTALA "does not create[] a general federal cause of action for medical malpractice in emergency rooms.'" Hunt, 317 F.3d at 894 (quoting Summers, 91 F.3d at 1137). "EMTALA focuses on uniform treatment of patients presented in hospital **emergency departments**." Hunt, 317 F.3d at 894 (emphasis added). "After a patient has been admitted in good faith as an inpatient, professional (i.e., doctor-patient) and fiduciary (i.e., hospital-patient) duties attach to the situation." Anderson v. Kindred Hosp., No. 1:05-cv-294, 2008 U.S. Dist. LEXIS 23162, at *11 (E.D. Tenn. Mar. 24, 2008). "State law is perfectly adept at delineating and enforcing these duties; the EMTALA is neither necessary nor intended to enforce them." Id. Accordingly, the Court holds that the regulation at issue is neither "arbitrary, capricious, [nor] manifestly contrary to" the EMTALA. See Chevron,, 467 U.S. at 844 ("legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute").

Having determined that an EMTALA violation cannot lie if Plaintiff was admitted, Plaintiff's EMTALA claims fail because he clearly was admitted to the hospital. Plaintiff alleges that, on January 12, 2010, he was seen in the ED by the intake coordinator and then was admitted for further

treatment by Dr. Ardekani. (Pet., ¶¶17-21). Plaintiff notes that Dr. Ardekani evaluated Plaintiff, who had been "admitted through intake." (Id., ¶23). Early on January 13, 2010, Plaintiff was "discharged" from JRMC for fighting with another patient. (Id., ¶¶32, 39).[4] Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged he was admitted to JRMC. Plaintiff's argument that he has not alleged that he was admitted is a strained and untenable reading of the Petition. J.P. Morgan Trust Co. Nat'l Ass'n v. Cleberg, 335 B.R. 398, 410 (Bankr. W.D. Mo. 2005)("all reasonable inferences from the Complaint must be drawn in favor of the Plaintiff, but the Court is not obliged to accept every strained interpretation of the allegations proposed by the plaintiff.")(internal citation omitted).

Thus, the Court finds that Plaintiff does not have a EMTALA claim because he was admitted to JRMC. While Plaintiff may or may not have a state law medical malpractice claim, he does not have a valid federal EMTALA claim against JRMC. Hunt, 317 F.3d at 894; Summers, 91 F.3d at 1137 ("claims of misdiagnosis or inadequate treatment are left to the state malpractice arena"). The Court dismisses Counts I and II of the Petition.

As an additional basis for dismissal, JRMC claims that Plaintiff cannot establish a causal connection between its discharge of Plaintiff and the injuries sustained by him. This Court agrees. While the EMTALA provides limited rights for civil enforcement by patients, this is only with regard to patients who have suffered "personal harm as a direct result of a participating hospital's violation of a requirement of this section." § 1395dd(d)(2)(A). Here, Plaintiff's allegations do not demonstrate that he was harmed as a "direct result" of JRMC's violation of EMTALA. Plaintiff was discharged on January 13, 2010, and was beaten up in St. Louis on January 23, 2010. Plaintiff's

---

[4]According to Merriam-Webster dictionary, "discharge" is defined as "to release from confinement, custody, or care." (www.merriam-webster.com, last visited May 9, 2012). Plaintiff's allegation that he was "discharged" clearly implicates that he was under the "custody" or "care" of JRMC prior to his release, which further supports a finding that he had been "admitted."

- 7 -

only basis for liability is that he was in an allegedly psychotic state when he was discharged on January 13, 2012. (Pet., ¶40). Plaintiff cannot establish a causal connection between his mental state upon discharge and his altercation ten days later with another person. The Court finds that the intervening ten days and the actions of a third party preclude any finding of liability against JRMC under EMTALA for its discharge of Plaintiff. The Court dismisses Counts I and II for this additional reason.

## II.     REMAND FOR LACK OF JURISDICTION

JRMC removed this action to federal court because this Court had federal subject matter jurisdiction based upon Plaintiff's EMTALA claims and supplemental jurisdiction over Plaintiff's remaining state law claims, pursuant to 28 U.S.C. §1367. This Court has dismissed all of Plaintiff's EMTALA claims and only his state law claims remain. The Court, therefore, lacks federal subject matter jurisdiction and remands Plaintiff's state law claims to the Circuit Court of Jefferson County, State of Missouri. An appropriate Order of Remand will accompany this order.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jefferson Regional Medical Center's Motion to Dismiss Counts I and II of Plaintiff's Petition for Failure to State a Claim Upon Which Relief May Be Granted (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** that the remainder of Plaintiff's Petition for Damages is remanded to the Circuit Court of Jefferson County, State of Missouri. An appropriate order of remand will accompany this order.

Dated this 15th day of May, 2012.

                                                        */s/ John A. Ross*
                                                        JOHN A. ROSS
                                                        UNITED STATES DISTRICT JUDGE